UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL A. M.,<br><br>Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:26-cv-05139-GJL<br><br>SOCIAL SECURITY DISABILITY APPEAL ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 11, 14, 15.

Having considered the Administrative Record (AR) and all memoranda, the Court concludes that the Administrative Law Judge (ALJ) committed harmful error in evaluating the medical opinion evidence. Accordingly, this matter is **REVERSED** and **REMANDED** pursuant to 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this Order.

//

## I. PROCEDURAL HISTORY

On October 26, 2022, Plaintiff filed applications for Title II Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423(a), and Title XVI Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 1381(a). AR 73, 96. His claims were denied initially on June 5, 2023, and upon reconsideration on February 15, 2024. AR 73, 96–98. The matter came on for hearing on December 10, 2024, and on February 14, 2025, ALJ David Johnson (the ALJ) issued a decision concluding that Plaintiff was not disabled. AR 17–33, 40. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 12, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. On February 16, 2026, Plaintiff filed a Complaint with this Court seeking judicial review of the ALJ's decision. Dkt. 1. Defendant filed the sealed Administrative Record in this matter on April 20, 2026. Dkt. 5.

## II. BACKGROUND

Plaintiff was born on February 9, 1977, and was forty-two years old on March 4, 2019, his alleged date of disability onset. AR 74. Plaintiff has a high school education. AR 276. According to the ALJ, Plaintiff suffers from severe impairments of: major depressive disorder; post-traumatic stress disorder; attention deficit hyperactivity disorder; generalized anxiety disorder; hypertension; hypothyroidism; asthma; obesity; and sleep apnea. AR 20.

The ALJ, however, found that Plaintiff was not disabled because he had the Residual Functional Capacity (RFC) through his Date Last Insured (DLI) to:

> perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), that does not require concentrated exposure to humidity or pulmonary irritants; that consists of simple instructions; that follows standardized procedures; that occurs in a consistent location; and that allows for a break after 2 hours of work.

AR 22.

//

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Plaintiff argues that the ALJ erred in evaluating: (1) the medical opinion evidence; (2) Plaintiff's subjective symptom testimony; (3) the lay witness evidence; and (4) that due to the ALJ's errors, the RFC is erroneous. Dkt. 11 at 2.

### A. Medical Opinion Evidence

First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. Dkt. 11 at 3–8. The Court agrees.

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[1] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

---

[1] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

1. Dr. Wilkinson

Dr. Wilkinson conducted a "Psychological/Psychiatric Evaluation" on behalf of Plaintiff's disability claim on September 14, 2022. AR 497. In Dr Wilkinson's opinion, Plaintiff has "marked" limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 499. Dr. Wilkinson also opined that Plaintiff had "severe" limitations in his ability to: (1) maintain appropriate behavior in a work setting; and (2) to complete a normal workday and work week without interruptions from psychologically based symptoms. *Id.* In turn, Dr. Wilkinson opined that Plaintiff had an overall severity rating of "severe[.]" *Id.* The ALJ found Dr. Wilkinson's opinion was "not persuasive." AR 28.

//

//

*i. Supportability*

As for supportability, the ALJ found Dr. Wilkinson's opinion was not supported[2] by his "examination which showed [Plaintiff] exhibited regular speech, normal thought processes, normal thought content, normal orientation, normal perception, normal fund of knowledge, normal abstract thinking, and normal insight/judgment." *Id.* Moreover, the ALJ noted that Plaintiff "demonstrated cooperative and appropriate behavior, *even if intense at times*[,]" and "was able to spell a five-letter words forwards but [not] backwards, recall three of three unrelated words immediately and one of three after a fifteen-minute delay, repeat six digits forward and four backwards, and complete serial 7s without error." *Id.* (emphasis added).

Plaintiff argues that "the ALJ fails to acknowledge Dr. Wilkinson's many abnormal clinical findings" that support his opinion. Dkt. 11 at 4. Indeed, despite noting "normal" observations at the evaluation, Dr. Wilkinson *also* noted that Plaintiff was "serious appearing, did not smile during the evaluation[,]" his attitude and behavior were "[c]ooperative" but nonetheless, "intense at times[.]" AR 500. Dr. Wilkinson also noted that Plaintiff's mood was "[v]ery low energy . . . depressed . . . still [has] suicidal ideations." *Id.*

Here, the ALJ does not explain why these abnormal observations at Plaintiff's evaluation were outweighed by the purportedly "normal" mental status observations that the ALJ identified. AR 28, and his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998); *see also Swanson v. Bisignano*, No. 24-4926, 2025 WL 2779300, at *2 (9th Cir. Sep. 30, 2025) (holding that the

[2] Here, the ALJ found Dr. Wilkinson's opinion was "inconsistent with the examination[.]" AR 28. The Court, however, observes that this finding more accurately goes to the "supportability" of Dr. Wilkinson's medical opinion. *See Woods*, 32 F.4th at 791–92. Although the Ninth Circuit has instructed ALJ's to "endeavor to use these two terms of art—'consistent' and 'supported'—with precision[,]" the ALJ's failure to do so here is not dispositive. *Id.* at 793 n.4. Nonetheless, ALJs should strive to use these terms of art with precision to effectuate meaningful review of their decisions. *See id.*

ALJ erred in rejecting a medical opinion because the ALJ "d[id] not explain how these general ["normal"] observations . . . contradict [the medical] opinion"). For this reason, the Court concludes that the ALJ's supportability findings were not supported by substantial evidence.

*ii. Consistency*

As for consistency, the ALJ found Dr. Wilkinson's opinion "inconsistent with the mental status examinations . . . [and with Plaintiff]'s activities that involve maintaining appropriate behavior in public situations as well as in group activities."[3] AR 28. Plaintiff argues that the ALJ "fails to acknowledge here that the overall record[ ] includes may abnormal clinical findings" that are consistent with Dr. Wilkinson's opinion. Dkt. 11 at 4.

Indeed, in reviewing the ALJ's citations for an inconsistency with Dr. Wilkinson's opinion, Exhibits 5F/17, 32, 46–47, for instance, more accurately show that Plaintiff experienced a "depressed mood[,]" he was "hopeless[,]" experienced decreased energy levels and nightmares, had "no focus, inability to concentrate, hard to focus on paperwork, forgetful[,]" and experienced "passive thoughts [of suicide] a couple days ago, [but expressed] no plan nor intent." AR 519, 533–34, 548–49. Exhibit 5F/77 shows Plaintiff was "casually dressed with appropriate grooming . . . [was] calm, cooperative, and maintains appropriate eye contact" and had a "good and stable" mood, but nonetheless, "endorse[d] passive [suicidal ideations] during this interview," and reported that his mental health problems made it "[v]ery [d]ifficult" to do work, take care of things at home, and get along with other people." AR 579.

---

[3] Plaintiff argues that "none of [Plaintiff]'s activities are actually inconsistent with Dr. Wilkinson's opinion[.]" Dkt. 11 at 4. The Court observes that the ALJ does not further elaborate on Plaintiff "maintaining appropriate behavior in public situations as well as in group activities" nor does the ALJ explain how those activities are inconsistent with Dr. Wilkinson's opinion. AR 28. This was error because an ALJ has a duty to "set forth" their reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sep. 22, 2022) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)). Here, the ALJ has not done so.

Likewise, Exhibit 5F/97 notes Plaintiff was "guarded[,]" AR 599, and scored a "15" on the PHQ-9, which is indicative of moderately severe depression. AR 600. Exhibit 5F/105–06, notes that Plaintiff's mood was "depressed" and "tired" and that he "endorse[d] passive [suicidal ideation] during this interview[.]" AR 607–08. Exhibit 5F/167–68 notes that Plaintiff was "[p]ositive for dysphoric mood" and presented "for medication management and *ongoing evaluation and management* of depression." AR 669–70 (emphasis added). Finally, Exhibit 5F/172–73 notes Plaintiff's mood and affect were "depressed[.]" AR 674.[4]

Here, once again, the ALJ's "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick*, 157 F.3d at 722–23. Indeed, the ALJ highlighted the less notable findings, by "cherry-pick[ing] some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). This was erroneous, and for this reason, the Court concludes that the ALJ's consistency findings, like the supportability findings, are not supported by substantial evidence.

2. Harmless Error Analysis

Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d at 1115. An error is harmless only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d

[4] In reviewing the ALJ's proffered citations, Exhibit 5F/153 is the only citation by the ALJ that is arguably inconsistent with Dr. Wilkinson's opinion. *Cf.* 498, 654–55. Nonetheless, Plaintiff's appearance at *one* appointment does not provide substantial evidence of an inconsistency with Dr. Wilkinson's opinion in light of: (1) the numerous appointments that *were* inconsistent with Dr. Wilkinson's opinion; and (2) the well-established maxim in this jurisdiction that the mere fact that mental health symptoms "wax and wane in the course of treatment is to be expected; it does not create an inconsistency." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (internal quotation marks and citation omitted).

1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination of whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118–19 (citations omitted).

Here, the ALJ's error is not harmless because, had the ALJ properly considered Dr. Wilkinson's opinion, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability may have changed. For this reason, the proper disposition is to reverse and remand the matter for further proceedings. *See id.* at 1115.

**B. Remaining Issues**

In light of this disposition, the Court need not address Plaintiff's remaining arguments regarding the medical opinion evidence, his subjective symptom testimony, his RFC, or the vocational testimony, because the ALJ must re-evaluate the entire sequential evaluation process on remand, including all of the medical opinion evidence, Plaintiff's subjective symptom testimony, and as necessary, Plaintiff's RFC. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

//

//

//

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** AND **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 19th day of October, 2026.

Grady J. Leupold
United States Magistrate Judge